**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**CHARYSE DUVALLE**,

    Plaintiff,

vs.                                                                                             Civ. No. 10-1024 BB/RHS

**CITY OF SANTA FE; CHIEF OF POLICE;**
**SGT. RIVA; SGT. ZUMMETS;**
**SGT. ANAY VARELA**,

    Defendant.

**MEMORANDUM OPINION AND ORDER DISMISSING COMPLAINT**

    **THIS MATTER** comes before the Court on pro se Plaintiff Charyse DuValle's motion seeking authorization to proceed *in forma pauperis* ("IFP") with this litigation, *i.e.*, without prepaying costs or filing fees. *See* Doc. 2, filed October 29, 2010. When determining whether to grant permission to proceed IFP, the Court must "review the affidavit and screen [DuValle's] case under 28 U.S.C. §§ 1915(a) and (e)." *Lister v. Dep't of Treasury*, 408 F.3d 1309, 1311 (10th Cir. 2005). Screening the case under § 1915(e) includes determining whether "the allegation of poverty is untrue" as well as determining whether the action "is frivolous or malicious, . . . fails to state a claim on which relief may be granted; or [] seeks monetary relief against a defendant who is immune from such relief." § 1915(e). "[I]n order to succeed on a motion to proceed IFP, the movant must show a financial inability to pay the required filing fees, as well as the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised in the action." *Lister*, 408 F.3d at 1312. If the Court determines that "the allegation of poverty is untrue," or that a complaint filed without the prepayment of filing fees fails to state a claim, it must dismiss the case. *See* § 1915(e)(2)(A), (B); *Trujillo v. Williams*, 465 F.3d 1210, 1217 n. 5 (10th Cir. 2006) (noting that dismissal under § 1915(e) is now mandatory).

Regarding the ability-to-pay prong of the IFP analysis, IFP status should be granted only if a plaintiff demonstrates that she "cannot because of [her] poverty pay or give security for the costs . . . and still be able to provide [her]self and dependents with the necessities of life." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

DuValle, who is 50 years old and has no dependents, receives disability payments of $659/month and $70/month in food stamps. *See* Doc. 2 at 2. A "Native American Indian," DuValle pays nothing for rent, mortgage, or utilities. *See id.* at 4, Complaint at 1. Her monthly expenses for necessities include $60 for food, $55 for clothing and laundry, and $43 for additional health or life insurance. *See* Doc. 2 at 4. Although, because of her disability, she apparently is covered by medicare/medicaid and possibly private insurance for her medical needs, she lists $213/month as "transportation" costs for her wheelchair. On these facts, the Court concludes that DuValle has not established that, because of her poverty, she cannot pay filing fees. Further, as discussed below, permission to proceed IFP must be denied and DuValle's Complaint must be dismissed for failure to state a cognizable federal claim against the Defendants.

DuValle is suing the City of Santa Fe, its Chief of Police, and several police officers under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. *See* Complaint at 3. Her "Complaint" consists of a letter addressed to the Chief of Police. *See id.* at 2. The letter is extremely disjointed and rather difficult to understand because, despite the fact that DuValle has had three years of college education, *see* Doc. 2 at 5, she expresses herself only in phrases separated by elipses instead of in sentences. *See* Doc. 1 at 2-3. DuValle contends that "Santa Fe County doesn't have no sidewalks," and that people, like herself, who use "power wheelchairs . . . need[] sidewalks." *Id.* at 2.

It appears that in May 2010, DuValle was driving her wheelchair on Cerrillos Road in Santa Fe "in [the] slow lane" when police received "numerous calls [and] complaints [] by motorists." *Id.* at 3. An unnamed city police officer told her to get up on the sidewalk, but she states that "there's no sidewalks," so she ignored him and continued going. *See id.* at 2-3. A second unnamed officer "jerked [her] wheelchair [to] get me [to] stop" and "yelled" in her face to get up on the sidewalk before he took her wheelchair away and sent her to jail. When she again ignored the officers and "continued going," the officers issued a citation to her for using an "off highway [] vehicle" on public streets. *Id.* at 3. Reading her Complaint liberally, DuValle apparently contends that issuing citations for operating a wheelchair on the public streets and not having sidewalks everywhere in Santa Fe violates the ADA's prohibitions against discrimination located in 28 C.F.R. Part 35. *See id.*

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II "simply extends the anti-discrimination prohibition embodied in section 504 [of the Rehabilitation Act] to all actions of state and local governments." H.R. Rep. No. 101-485(II), at 84 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 367 (emphasis added).

Under the ADA, when a municipality constructs *new* roadways or sidewalks, or alters existing ones, it must comply with the ADA. *See* 28 C.F.R. § 35.151. Thus, all streets and sidewalks created or altered after January 26, 1992 must be in compliance with the ADA's standards for curb ramps. *See* 28 C.F.R. § 35.151(e)(2) (requiring that "[n]ewly constructed or altered street level pedestrian walkways must contain curb ramps or other sloped areas at intersections to streets, roads, or highways"). But DuValle has not cited, and the Court is not aware of, any provision in the ADA or the Rehabilitation Act that requires a city to *create* sidewalks along every public street that existed prior

to 1992, as DuValle desires. Accordingly, the Fifth Circuit has held that plaintiffs can establish "cognizable claims under Title II only to the extent they have alleged a *noncompliant* sidewalk, curb, or parking lot denies them access to a program, service, or activity that does fall within the meaning of Title II." *Frame v. City of Arlington*, 616 F.3d 476, 490 (5th Cir. 2010) (italics added). *See also N. J. Prot. & Advocacy, Inc. v. Twp. of Riverside*, No. 04-5914, 2006 WL 2226332 at *3 (D.N.J. Aug.2, 2006) (holding that sidewalks were not "in and of themselves, programs, services, or activities for the purpose of the ADA's implementing regulations;"); *cf. Kinney v. Yerusalim*, 9 F.3d 1067, 1072 (3d Cir. 1993) (finding that street resurfacing is an "alteration" under 28 C.F.R. § 35.151(b), thereby requiring curb cuts under 28 C.F.R. § 35.151(e)). DuValle has not stated facts to show a violation of the ADA by the City of Santa Fe.

Further, DuValle has not stated a cognizable claim under Title II against the individual Defendants because Title II's prohibition against discrimination applies to "public entit[ies]" and not to individuals. *See* 42 U.S.C. § 12132; *Butler v. City of Prairie Vill., Kan.*, 172 F.3d 736, 744 (10th Cir. 1999) (holding "that the ADA precludes personal capacity suits against individuals who do not otherwise qualify as employers under the statutory definition").

The Court will not permit DuValle an opportunity to amend her filing to include a claim under 42 U.S.C. § 1983 against the individual officers because DuValle has not alleged any facts to show an unreasonable use of force by the officers who ticketed her that would give rise to a claim for a constitutional violation under the Fourth Amendment. Although the Fourth Amendment forbids unreasonable seizures, including the use of excessive force, the ultimate question "is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989). Yelling at a person who ignores instructions, physically stopping the person from continuing to commit a violation that places that person and others in physical

danger, and threatening to take that person to jail if the person continues to refuse to comply with the officer's reasonable orders does not, as a matter of law, provide a basis for an excessive-force claim. *See id.* at 396 ("Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.").

**IT IS ORDERED** that DuValle's motion to proceed IFP [Doc. 2] is DENIED and her case is DISMISSED without prejudice under § 1915(e)(2)(A) and (B).

_____
UNITED STATES DISTRICT JUDGE